# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| **Plaintiff,** | § | **Case No: 3:25-CR-957 (LS)** |
| | § | |
| **v.** | § | |
| | § | |
| **CAPSULCN INTERNATIONAL** | § | |
| **CO., LTD.,** | § | |
| | § | |
| **Defendant.** | § | |

**MOTION FOR FINDING OF ACTUAL NOTICE OF SUMMONS AND FOR ISSUANCE OF NEW SUMMONS TO APPEAR BEFORE THE COURT AS TO DEFENDANT CAPSULCN INTERNATIONAL CO., LTD.**

## I.    Introduction

Defendant CAPSULCN INTERNATIONAL CO., LTD ("CAPSULCN") has failed to appear and stand before this Court to answer charges that it violated the Controlled Substances Act, engaged in a smuggling conspiracy, and engaged in international promotional money laundering, despite being fully aware of the charges and the duty to appear in Court. The United States respectfully moves this Court for: (1) certification of facts regarding the Government's service on CAPSULCN; and (2) issuance of a new summons for CAPSULCN's rescheduled arraignment, on a date set by the Court, to be served pursuant to Federal Rule of Criminal Procedure 4. Should

CAPSULCN fail to appear on the date of the ensuing arraignment, the United States will proceed with contempt proceedings against CAPSULCN.

## II.    Statement of Facts

### A.    Background

On April 23, 2025, a grand jury sitting in the Western District of Texas returned an indictment against CAPSULCN, its principal/general manager, and two employees.[1] *See* Indictment, Dkt. 9 (Apr. 23, 2025). CAPSULCN was charged with smuggling and conspiracy to smuggle in violation of 18 U.S.C. §§ 371 and 545; conspiracy and substantive violations of the Controlled Substances Act in violation of 21 U.S.C. §§ 843(a)(5), 843(a)(7), 843(b), and 846; and conspiracy to commit international promotional money laundering, along with substantive money laundering violations, in violation of  18 U.S.C. §§ 1956(a)(2)(A) and 1956(h). The Indictment was unsealed on May 12, 2025.

As alleged in the Indictment, CAPSULCN "marketed, sold, imported, and distributed such pill-making equipment and materials to customers in the United States who then used that equipment to manufacture pills and capsules containing

---

[1] The indicted principal/general manager was XIAOCHUAN PAN (a/k/a "潘肖川" and "Ricky Pan"). Indictment at ¶ 14, Dkt. 9 (Apr. 23, 2025). Additionally, CAPSULCN employees, TINGYAN YANG (a/k/a "杨挺燕," "Monica Yang," and "Cici"), and XI CHEN (a/k/a "晨曦" and "Inna") were also indicted. *Id*. at ¶¶ 15-16. All three defendants are currently international fugitives of justice.

controlled substances, including fake pills bearing the markings of legitimate prescription drugs." *Id.* at ¶ 2. CAPSULCN allegedly carried on this criminal activity "for more than thirteen years," and "knew and had reason to believe" that drug trafficking customers would use this equipment to manufacture counterfeit medication containing "fentanyl or methamphetamine." *Id.* at ¶ 2-3.

On May 21, 2025, the Clerk of Court issued a summons for CAPSULCN to appear in Court before the Honorable Laura Enriquez for initial apperance on September 5, 2025, at 3:30pm. Summons, Dkt. 33 (May 21, 2025). The United States served the Summons at least **four** different ways, including by email and courier. With knowledge of the impending indictment against it, CAPSULCN retained legal counsel specifically to represent the company and its principals in negotiating with the United States. *See* Declaration of Kathy J. McGlone ("McGlone Decl."), ¶ 12, Ex. 7. CAPSULCN's counsel, however, has not entered an appearance in this matter.

## B.     CAPSULCN has been aware of the Indictment since it was unsealed in May 2025.

After the Indictment was unsealed, the United States issued a press release describing the charges against CAPSULCN and its co-defendants. *See id.* ¶ 3(a), Ex. 1. Reports of the Indictment subsequently appeared in a variety of publications. *See id.* ¶ 3(b), Ex. 2. Additionally, the United States executed Seizure Warrants issued in the Western District of Texas for four web domains operated by CAPSULCN,

including "capsulcn.com," "ipharmachine.com," "huadapharma.com," and "pillmold.com." *See id.* ¶ 4. The United States seized these domains around the same time that the Indictment was unsealed on May 12, 2025. *See id.* Upon seizure of the web domains, the websites displayed the following "splash page:"



Following the Seizure of the four web domains, this Court issued a Seizure Warrant for a fifth CAPSULCN operated web domain, "hifmachines.com." The United States seized the website and replaced it with a similar "splash" page. Soon thereafter, CAPSULCN established and began operating two additional web domains, "capsulcn.com.cn" and "ipharmachine.com.cn" to continue its illicit operations.

On June 10, 2025, two attorneys from a United States-based law firm contacted the U.S. Attorney's Office and left a voicemail message. In that voicemail message,

PARTNER ONE stated that both she and PARTNER TWO[2] had been in "discussions" with a "potential client" whose corporation was "subject" to an "indictment" filed in this Court. During a subsequent phone call with counsel for the United States, PARTNER ONE acknowledged that the "potential clients" were PAN and CAPSULCN. PARTNER ONE was subsequently informed that she would need to provide written confirmation that she was retained by CAPSULCN before further communications take place.

### C. The United States served CAPSULCN with the Summons for the September 5, 2025 initial appearance.

On May 21, 2025, the Clerk of Court issued a summons for CAPSULCN to appear in Court before the Honorable Laura Enriquez on September 5, 2025, at 3:30 pm. Summons, Dkt. 33 (May 21, 2025). The summons was addressed to CAPSULCN's incorporated address in the United Kingdom and to its physical address located in Ruian, People's Republic of China. *Id*. Following issuance of the summons, the United States took the following steps to serve the summons to CAPSULCN pursuant to Fed. R. Crim. P. 4(c)(3)(D)(ii).

---

[2] The United States redacted the identities of PARTNER ONE and PARTNER TWO in this brief. However, a notice under seal containing the identities of PARTNER ONE, PARTNER TWO, and their firm will be filed with the Court.

1.  Service of CAPSULCN via Mutual Legal Assistance

On June 20, 2025, the U.S. Department of Justice, Office of International Affairs ("OIA") sent a letter to the People's Republic of China Central Authority, requesting that the Summons and Indictment be served at CAPSULCN's corporate headquarters in China pursuant to the Agreement between the Government of the United States of America and the Government of the People's Republic of China on Mutual Legal Assistance in Criminal Matters, which entered into force on March 8, 2001. *See* McGlone Decl., ¶ 6. In response, the People's Republic of China Central Authority sent a letter on August 28, 2025, which acknowledged receipt of the summons. *See id.* ¶ 7, Ex. 3. However, the letter offered no indication whether the summons was delivered to CAPSULCN. *See id.*

2.  Direct Service to CAPSULCN

The United States used open-source research to identify CAPSULCN's address of incorporation in the United Kingdom. The United States learned that CAPSULCN filed paperwork with the United Kingdom Companies House on April 14, 2025, which notified the British Government of its new corporate address for service of legal process. *See id.* ¶ 8, Ex. 4. On August 13, 2025, the United States sent the Summons via FedEx to CAPSULCN's revised corporate address in the United Kingdom. *See id.* ¶ 9, Ex. 5. On August 15, 2025, the United States received notification that the summons was delivered. *See id.*

Additionally, the United States identified a physical address of CAPSULCN located in the People's Republic of China through a review of customs records. *See id.* ¶ 10. On August 13, 2025, the summons was sent via FedEx and was addressed to CAPSULCN's Chinese physical address. *See id.* ¶ 11, Ex. 6. On August 19, 2025, the United States received notification that FedEx attempted to deliver summons at CAPSULCN's headquarters, but that the delivery was "refused." *See id.*

On August 20, 2025, the United States received a letter from PARTNER TWO. *See id.* ¶ 12, Ex. 7. PARTNER TWO's letter stated that PARTNER TWO's law firm had "been retained by CapsulCN International Co., Ltd. and its principals (collectively, 'the Client') in connection with the criminal action pending in your district, 25-CR-957 (LS)." *See id.* The letter also stated that the firm was authorized to review discovery and negotiate a "global disposition" to the criminal case. *See id.* However, the letter added that "the Client has not authorized us to file a Notice of Appearance in this matter." *See id.*

On August 25, 2025, the United States responded to PARTNER TWO's letter. *See id.* ¶ 13, Ex. 8. The United States informed PARTNER TWO that the United States would not negotiate CAPSULCN's criminal matter until it appeared before the Court. *See id.* The United States included a copy of the summons in the response. *See id.*

That same day, PARTNER ONE responded. *See Id.* ¶ 14, Ex. 9. The letter acknowledged receipt of the summons but added that "we are not legally authorized to accept service of process on our clients' behalf." *See Id.* PARTNER ONE's letter further stated that, "[w]e cannot accept your electronic summons for any purpose, as we are not legally authorized to accept service of process on our clients' behalf. Nor have we been authorized to file a Notice of Appearance or appear at any court proceedings." *See id.* PARTNER ONE's letter added that their firm was "offering to negotiate a potential resolution in your prosecution of both a company and an individual who are beyond your reach" and that the United States' demand that CAPSULCN appear in Court for arraignment before negotiation of a resolution was "unreasonable" and as a result, "declined." *See id.* Thus, PARTNER ONE's response appeared to communicate their client's refusal to comply with the summons. *See, generally id.*  Neither PARTNER ONE nor PARTNER TWO entered a notice of appearance in the matter.

Additionally, on August 22, 2025, Homeland Security Investigations Special Agent McGlone sent the summons via FedEx addressed to PARTNER TWO at PARTNER TWO's New York office. *See id.* ¶ 15, Ex. 10. The summons was delivered on August 26, 2025. *See id.*

## III.   Legal Authorities

### A.   Federal Rule of Criminal Procedure 4 authorizes the United States to serve a foreign corporate criminal defendant by "any other means that gives notice."

Federal Rule of Criminal Procedure 4 (the "Rule") sets forth the manner in which a foreign corporation can be served. The Rule provides that a summons may be served on "an organization not within a judicial district of the United States" either (i) by serving an officer or agent of the foreign corporation "in a manner authorized by the foreign jurisdiction's law" or (ii) "by any other means that gives notice," including, but not limited to, any means (a) "stipulated by the parties," (b) "undertaken by a foreign authority in response to a letter rogatory, a letter of request, or a request submitted under an applicable international agreement;" or (c) "permitted by an applicable international agreement." Fed. R. Crim. P. 4(c)(3)(D)(ii) (2024). The means of service described in the non-exhaustive list in Rule 4(c)(3)(D)(ii)(a)-(c) are presumed to provide notice, but the government can satisfy Rule 4 by any means that provides notice, even if not specifically enumerated. *In re Pangang Grp. Co.,* 901 F.3d 1046, 1056 (9th Cir. 2018) (internal citations omitted).

Accordingly, under Rule 4(c)(3)(D)(ii), the government is not limited to formal service under domestic or foreign law and may instead use informal means to serve a defendant. *See id* at 1056-57. The government has served foreign corporate criminal defendants via email, fax, and mail, among other means. *See, e.g., United States v.*

*Liu, et al.*, No. 2:19-cr-00282-RGK, Doc. 177 (Order Issuing Civil Contempt Sanctions), at ¶4 (C.D. Cal. Dec. 2, 2020) (holding Chinese corporate criminal defendant in contempt after finding it was served with criminal summons via email to counsel for its chairman and president, via email to its corporate headquarters in China, and via fax to its Hong Kong office); *United States v. Türkiye Halk Bankasi A.S., a/k/a "Halkbank"*, 426 F. Supp. 3d 23, 29-30 (S.D.N.Y. 2019) (finding "no doubt that [the Turkish defendant] was notified of the charges against it" after the government served defendant via various means, including by email to its general corporate email address, by email to its outside counsel, by email to a senior advisor, and by mail to its legal department).

Indeed, Rule 4 was amended in 2016 expressly "to enable the Government more easily to make service upon foreign corporations." *Halkbank*, 426 F. Supp. 3d at 29. Prior to 2016, Rule 4 had required that a foreign corporate criminal defendant could only be served by formal means, namely by mail "to the organization's last known address within the district or to its principal place of business elsewhere in the United States." Fed. R. Crim. P. 4(c)(3)(C) (2011). The amended rule "remove[d] an unnecessary impediment to the initiation of criminal proceedings against organizations that commit domestic offenses but have no place of business or mailing address within the United States." Fed. R. Crim. P. 4 (2016), Advisory Committee Note to 2016 Amendments. And the Advisory Committee responsible for the

amendments "chose not to require the government 'to show other options were not feasible or had been exhausted before resorting to certain options for service.'" *Pangang*, 901 F.3d at 1052 (internal citations omitted).

Moreover, the Advisory Committee responsible for the 2016 amendments overruled objections that the amendments would authorize simple informal service. During the comment period for the proposed amendments, a law firm representing a Chinese corporation argued that the proposed language would allow the government to serve a summons "simply by sending a letter or an email." *Id.* at 1051-52 (citation omitted). In response, the DOJ submitted a comment letter arguing that these supposed evils "were features, not flaws, of the proposed amendment." *Id.* at 1052 (citation omitted). "Despite being aware of these concerns, the Advisory Committee chose to make no changes in the rule." *Id.* at 1057. Ultimately, the revised rule reflected the Advisory Committee's conclusion that "the point of the amendment is to provide a means of service that gives notice, and there is no legitimate interest in allowing a procedure in which an institutional defendant can feign lack of notice." *Id.* at 1059 (internal citations omitted).

**B.    This Court has inherent authority to enforce its lawful orders (to include summonses) through Contempt Proceedings.**

Contempt of court orders are codified in 18 U.S.C. § 401, which provides that a district court has the "power to punish by fine or imprisonment, or both, at its

discretion, such contempt of its authority, and none other, as ... [d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command." 18 U.S.C. § 401(3). Apart from this statutory authority, the power to sanction for contempt is "inherent in all courts" and is best understood in terms of its utility—its effects and the purposes it serves in the administration of justice. *See Bessette v. W. B. Conkey Co.*, 194 U.S. 324, 326-27 (1904). A contempt is civil when its sanction seeks to coerce the defendant into compliance with the court's rules. *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303–04 (1947). Federal district courts have contempt authority over all their lawful orders, including summonses to appear. *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 798 (1987); *United States v. Bernardine*, 237 F.3d 1279, 1283-84 (11th Cir. 2001) (holding that a "summons to appear . . . constituted a lawful order or command by the court" and the defendant "was obligated to comply with it"); *see also United States v. Bollenbach*, 125 F.2d 458, 460 (2d Cir. 1942) ("No judge can do his duty, if his power to maintain decorum and secure his authority from being flouted, is subject to cavil and captious question; he must be able to repress disorders quickly and, if necessary, ruthlessly[.]").

Under the Federal Magistrates Act, 28 U.S.C. § 636(e), federal magistrate judges are authorized to exercise contempt authority in certain limited circumstances to enforce their lawful orders. Under 28 U.S.C. § 636(e)(6)(B)(iii), where an "act constitutes a civil contempt," the magistrate judge "shall forthwith certify the facts

to a district judge and may serve or cause to be served . . . an order requiring such person to appear before a district judge upon a day certain to show cause why that person should not be adjudged in contempt by reason of the facts so certified." *See also Taberer v. Armstrong World Indus., Inc.*, 954 F.2d 888, 905 (3d Cir. 1992) ("[U]nder § 636(e) a federal district judge adjudicates and punishes contempts which occur before a United States magistrate.") (citation omitted).

"Under the certification process, the magistrate judge may conduct a hearing, but the magistrate judge functions only to certify the facts and not to issue an order of contempt." *Bowens v. Atl. Maint. Corp.,* 546 F. Supp. 2d 55, 71 (E.D.N.Y. 2008) (collecting cases) (internal quotations and citations omitted). "In certifying the facts under Section 636(e), the magistrate judge's role is to determine whether the moving party can adduce sufficient evidence to establish a prima facie case of contempt." *Id.* (internal quotations and citations omitted); *Taberer*, 954 F.2d at 903 ("[U]nder the statute, the magistrate judge's certification of facts seems designed to serve the function of a charging instrument or pleading for a trial to be held before the district judge."). "The district court, upon certification of the facts supporting a finding of contempt, is then required to conduct a *de novo* hearing at which issues of fact and credibility determinations are to be made." *Bowens*, 546 F. Supp. 2d at 71.

The District Court for the Central District of California used this process to hold the Chinese corporation "China Zhongwang Holdings" ("CZH") in civil contempt

for failing to appear in response to a summons to appear in a criminal case. *See United States v. Liu, et al.*, 2:19-cr-00282-RGK (C.D. Cal.). After CZH failed to appear in response to summonses served for two different initial appearance dates, the United States moved to certify those facts and issue a show cause order against the company. *See* Gov't Motion for Certification of Facts and Issuance of Order to Show Cause against Defendant China Zhongwang Holdings, Dkt 170 (Oct. 22, 2020). The magistrate judge then certified facts related to CZH's failure to appear and ordered the company to appear before the district court judge at a show-cause hearing approximately one month later. *See* Certification and Order to Show Cause re Contempt, Dkt. 171 (Oct. 22, 2020) (corrected in Dkt. 172). When CZH failed to appear, the district court judge granted the "Order to Show Cause re Contempt requesting sanctions." *See* Criminal Minutes, Dkt. 175 (Nov. 30, 2020). The district court judge then issued a written order holding CZH in civil contempt and imposing a daily fine to begin accruing seven days after the order if CZH continued to fail to appear. *See* Order Issuing Civil Contempt Sanctions to Defendant China Zhongwang Holdings for Failure to Appear at Initial Appearance, Dkt. 177 (Dec. 2, 2020).

## IV.    Argument

As described above, the United States served the Summons on CAPSULCN five different ways. The evidence indicates that CAPSULCN either received or was aware of one or more of these transmissions. Indeed, the United States received notice

that the Summons was delivered to CAPSULCN's incorporated address in the United Kingdom. McGlone Decl., ¶ 9, Ex. 5. CAPSULCN's retained counsel further acknowledged in a letter to the United States that their firm was in receipt of the Summons but nonetheless appeared to indicate their client's refusal appear in Court pursuant to the Summons. *See id.* ¶ 14, Ex. 9. Moreover, the United States received notice that the summons was also delivered to this same law firm. *See id.* ¶ 15, Ex. 10. What's more, the Summons sent to CAPSULCN's physical address in China was not delivered because the delivery was "refused." *See id.* ¶ 11, Ex. 6. CAPSULCN's refusal to accept the delivery is further evidence that CAPSULCN received proper notice. *See, e.g., Halkbank*, 426 F. Supp. 3d at 29-30 (noting Turkish corporate criminal defendant's refusal to accept FedEx delivery from U.S. Attorney's Office supported finding that it had notice).

Based on these facts in conjunction with the process for service of summons outlined in Rule 4 of the Federal Rules of Criminal Procedure, the United States requests that the Court certify the above facts and rule that CAPSULCN had received proper notice of its obligation to appear on September 5, 2025.

To be clear, CAPSULCN has the right to raise any legitimate defense to the Court; however, it must do so "following arraignment." *Halkbank*, 426 F. Supp. 3d at 34 (*citing* Fed. R. Crim. P. 12(b); *United States v. Yousef*, 750 F.3d 254, 260 (2d Cir. 2014)). As a result, CAPSULCN has "two reasonable choices: it can either appear in a U.S. court to raise any legitimate defense or it can choose not to appear and face any attendant risks." *See Halkbank*, 426 F. Supp. 3d at 35.

Thus, the United States requests that the Court issue and enforce a new Summons for CAPSULCN's arraignment. The United States will serve the new summons pursuant to Rule 4, which will include service on CAPSULCN's counsel for this case. *See* Fed. R. Crim. P. 4. Should CAPSULCN fail to appear on the date of the second arraignment, the United States will proceed with instituting contempt proceedings against CAPSULCN.

## V.    Conclusion

For the foregoing reasons, the United States respectfully requests that the Court: (1) certify the above facts; and (2) issue a new Summons for CAPSULCN's arraignment on a date set by the Court to be served pursuant to Fed. R. Crim. P. 4.

Dated: October 6, 2025
        El Paso, Texas

                                        Respectfully submitted,

                                        JUSTIN R. SIMMONS
                                        UNITED STATES ATTORNEY

                                        By:    s/Steven Spitzer
                                               Steven Spitzer
                                               Assistant United States Attorney

                                        LISA K. HSIAO
                                        ACTING DIRECTOR
                                        U.S. DEPARTMENT OF JUSTICE
                                        ENFORCEMENT          &          AFFIRMATIVE
                                        LITIGATION BRANCH[3]

                                        By:    s/Colin W. Trundle
                                               Colin W. Trundle
                                               Cadesby B. Cooper
                                               Trial Attorneys

---

[3] The U.S. Department of Justice Enforcement & Affirmative Litigation Branch is the successor to the U.S. Department of Justice Consumer Protection Branch.